Westcot B. STONE, III, et al., Plaintiffs,

v.

WESTERN AIR LINES, INC., Defendant.

WESTERN AIR LINES, INC., Third Party Complainant,

v.

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, etc., et al., Third Party Defendants.

No. CV 81–5521 AWT.

United States District Court, C. D. California.

July 8, 1982.

Raymond C. Fay, Haley, Bader & Potts, Chicago, Ill., Fred T. Ragsdale, Los Angeles, Cal., for plaintiffs.

William J. Kennedy, Darling, Hall & Rae, Los Angeles, Cal., for defendant and third party complainant Western Air Lines, Inc.

Michael E. Abram, Cohen, Weiss & Simon, New York City, Susan R. Hershman, Joel N. Klevens, Fogel, Rothschild, Feldman & Ostrov, Los Angeles, Cal., for third party defendants Air Line Pilots Ass'n, Intern. et al.

## MEMORANDUM OPINION AND ORDER

TASHIMA, District Judge.

On December 17, 1981, the Court denied the motion of plaintiffs[1] for a preliminary injunction against defendant Western Air Lines, Inc. ("Western"). Plaintiffs now seek reconsideration of the Memorandum

1. The motion of plaintiff White, however, who was a second officer at the time he reached age 60, was granted. "Plaintiffs" in this opinion means all plaintiffs, except plaintiff White.

Decision and Order of December 17 (the "Memorandum Decision"), and renew their request for injunctive relief *pendente lite.* Western opposes plaintiffs' motion and moves for summary judgment.

This case, like *Criswell v. Western Air Lines, Inc.*, 514 F.Supp. 384 (C.D.Cal.1981), challenges allegedly discriminatory employment practices prohibited by § 4(a) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a). Although plaintiffs have characterized the two cases as identical, plaintiffs here are in a somewhat different position than the plaintiffs in *Criswell.* Whereas in *Criswell,* the plaintiffs had bid on, and were denied, vacant second officer positions prior to reaching age 60, plaintiffs here have made no showing that positions were available and that they were denied vacant positions to which they were entitled. The issue posed by these motions is whether age-60 captains seeking to downbid to second officer positions may continue to retain their seniority rights after age 60 and exercise them when vacancies occur. While in *Criswell, supra,* 514 F.Supp. at 391 n.13, the court recognized that in an otherwise neutral setting Western was not obligated to offer retiring captains positions where none exist upon their attaining age 60, it has never addressed the question of whether, in light of its other employment practices discussed below, Western's policy of severing age-60 captains from the company, notwithstanding their desire to become second officers as positions become available, is violative of the ADEA.

The issue must be examined in light of the somewhat unusual employment practices of Western. Although in many industries, retirement from, or loss of, a particular position terminates the entire employment relationship, this is not always the case with Western. An examination of the evidence presented by plaintiffs,[2] as well as the terms of the collective bargaining agreement (the "Pilot Agreement") be-

tween Western and the Air Line Pilots Association ("ALPA"), reveals that flight deck employees who lose their jobs due to elimination of particular flights or positions, or due to medical disabilities, are not severed from employment. Instead, they are allowed, through various mechanisms, to displace other employees, go on furlough, or simply remain in Western's employ in a "displacement pool." It is against this backdrop that plaintiffs' claims of unlawful discrimination must be considered.

In denying plaintiffs' motion for a preliminary injunction, the Court found that plaintiffs had not shown that they had a fair chance of success on the merits. *Benda v. Grand Lodge, IAM,* 584 F.2d 308, 314–15 (9th Cir. 1978), *cert. dismissed,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). This decision was based on the grounds that plaintiffs had not established a *prima facie* case, and that even if they had, evidence submitted by ALPA regarding operation of the seniority provisions appeared to rebut the *prima facie* case. Pursuant to plaintiffs' present motion, the Court has now considered the additional evidence adduced and re-evaluated the grounds for its previous decision in light of that new evidence, and has concluded that plaintiffs have raised serious questions regarding the lawfulness of Western's employment policies and that they have a fair chance of success on the merits.

I.  *Probability of Success on the Merits*

a.  *Prima Facie Case Based on Discriminatory Treatment*

■ It is well-established that a *prima facie* case of age discrimination may be established by showing either discriminatory treatment or disparate impact. *Douglas v. Anderson,* 656 F.2d 528, 531 (9th Cir. 1981); *Kelly v. American Standard,* 640 F.2d 974, 980 (9th Cir. 1981); *cf. Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252 n.5, 101 S.Ct. 1089, 1093 n.5, 67 L.Ed.2d 207 (1981) (dictum recognizing that

**2.** The primary ground which supports plaintiffs' motion for reconsideration is, literally, newly-discovered evidence; evidence which

plaintiffs have obtained in discovery conducted after the motion for preliminary injunction was heard and determined.

factual issues and character of proof differ under each theory); *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1013 (2d Cir. 1980), *cert. denied*, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981) (analysis of Title VII case under both theories). In the Memorandum Decision, I found that five of the plaintiffs had not established a *prima facie* case of intentional discrimination in that they had not shown the existence of a vacancy in the job sought. *Teamsters v. United States*, 431 U.S. 324, 358 n.44, 97 S.Ct. 1843, 1866 n.44, 52 L.Ed.2d 396 (1977), citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Nanty v. Barrows Co.*, 660 F.2d 1327, 1332 (9th Cir. 1981). I based that decision on the fact that the existence of a vacancy in the job sought is the second element of the well-known *McDonnell Douglas* formula for establishing a *prima facie* case of discriminatory treatment. *McDonnell Douglas Corp.*, *supra*, 411 U.S. at 802, 93 S.Ct. at 1824. Many recent cases, however, recognize that the *McDonnell Douglas* test can and should be modified to accommodate differing factual circumstances. *E.g., Douglas, supra*, 656 F.2d at 532; *Grant, supra*, 635 F.2d at 1014; *Loeb v. Textron*, 600 F.2d 1003, 1014 (1st Cir. 1979). The overriding inquiry in the recent cases is whether the evidence is sufficient to support an inference of discrimination. This test may be satisfied by producing evidence that identifies age as the likely reason for an adverse employment decision. *Douglas, supra*, 656 F.2d at 532.

██ Viewed in this light, plaintiffs, on reconsideration, have presented evidence which supports a theory of discriminatory treatment. They rely in part on deposition testimony of Western employees Richard Mitchell, Robert Fitch, Donald Vena and William Newell, which indicates that Western routinely set aside and refused to consider the bids of captains nearing age 60 seeking second officer positions. Additionally, plaintiffs point to Western's Statement

of Corporate Policy, adopted after the decision in *Criswell*, as manifesting continued intent to discriminate on the basis of age. Finally, they rely on evidence, first presented in *Criswell*, that a majority of pilot movement occurs not through bidding for vacancies, but through displacement and other mechanisms. This point is underscored by evidence that Western and ALPA signed a special agreement, outside of the regular Pilot Agreement, for the sole purpose of maintaining the employee status of 737 second officers whose positions had been eliminated. No such efforts were made to accommodate age-60 captains seeking second officer positions.

ALPA claims that, by virtue of the operation of the neutral seniority rules, plaintiffs would not have been awarded second officer positions even had their bids been considered. Under ALPA's theory, plaintiffs failed to establish a *prima facie* case of age discrimination in that they did not establish that there were vacancies for which they were eligible. The lack of vacancies in the position sought would, therefore, eliminate age as the likely reason for an adverse employment decision.[3]

The question of whether plaintiffs have shown that age was the likely reason for an adverse employment decision can be answered only by first determining precisely what "employment decision" is in issue. Under ALPA's view of the case, the only "employment decision" in issue is whether Western would have been justified in denying plaintiffs employment on the ground that, at the time plaintiffs retired as captains, there were no second officer positions to which they were entitled. Under plaintiffs' view of the case, Western's "employment decision" encompasses the entire spectrum of its treatment of age-60 captains; more specifically, plaintiffs focus on Western's mandatory retirement and severance from the company of age-60 captains seeking to obtain second officer positions in the event that no such positions are immediately available.

**3.** This rationale was adopted in the Memorandum Decision, denying the preliminary injunc-  tion.

Consistent with *Criswell,* and with what appears to be the reality of Western's employment practices, a broader view of the term "employment decision" should be adopted. The evidence submitted by plaintiffs in conjunction with this motion, establishes that Western's "employment decision" in this case consisted of more than the mere processing of bids according to a seniority system. If one views downward movement of Western pilots as a whole, including movement by displacement, it becomes apparent that age-60 captains seeking to downbid are the only individuals who are severed from the company rather than allowed to maintain their employee status until such time as a vacancy occurs. Plaintiffs have presented sufficient evidence to establish a likelihood that age is a determining factor in Western's failure to consider their applications, and in Western's refusal to accommodate them in the same manner in which other employees are accommodated. I therefore, find that they have, for the purpose of these motions, established a *prima facie* case based on discriminatory treatment.

### b. *Disparate Impact*

Upon reconsideration, it appears likely that plaintiffs can also establish a *prima facie* case based on a disparate impact theory. To do so, they need only establish that despite the facial neutrality of a particular policy, its impact falls more heavily on one group than another. *Grant, supra,* 635 F.2d at 1015. Under such a theory, the plaintiff is relieved of the burden of proving discriminatory motive, *Id.* at 1014, and the focus of the case changes from particular employment decisions to consideration of general policy toward particular groups of individuals.

The evidence submitted by plaintiffs tends to show that, notwithstanding ALPA and Western's contention that current employment policies are neutral, their impact falls more heavily on age-60 captains seeking to become second officers. For example, the company has seen fit to adopt pro-

grams outside of the Pilot Agreement, such as the 737 Second Officer Pool, which are designed to maintain the employment status of employees without positions, but has not extended this benefit to age-60 captains. I find that the consequences of such policies appear to be discriminatory, and therefore, that the plaintiffs have established a *prima facie* case based on disparate impact.

### c. *Rebuttal of Prima Facie Case*

■ Once plaintiffs have established a *prima facie* case, the defendant bears the burden of coming forward with evidence to rebut the inference of discrimination. *EEOC v. County of Santa Barbara,* 666 F.2d 373, 375 (9th Cir. 1982). Western and ALPA have chosen to defend this action, at least in part, on the ground that the company's policy is justified by a *bona fide* seniority system, and is therefore exempt under § 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2).

■ Upon reconsideration of the arguments raised by both sides, I am persuaded that Western's seniority system is not an issue in these motions. It is true that ALPA has demonstrated, based on various seniority provisions in the Pilot Agreement, that had plaintiffs' bids been considered, they would not have been awarded second officer positions. Nonetheless, viewing this case from a broader perspective, it is apparent that plaintiffs' alleged injury stems not from the application of particular seniority rules, but rather from a policy, *nowhere embodied in the Pilot Agreement,* which equates retirement as a captain at age 60 with a complete severance from the company.

Given the totality of Western's employment practices, there is a serious question whether mandatory severance from the company at age 60, notwithstanding a desire to fill a position which is not subject to the FAA's Age 60 rule,[4] is permissible under the ADEA. As stated in the May 4, 1979 Opinion Letter by the Administrator

---

4. 14 C.F.R. § 121.383(c). *See Criswell, supra,* 514 F.Supp. at 389, for a discussion of this rule.

of the Wage and Hour Division of the United States Department of Labor:

> "In summary, while the ADEA does not require that a carrier provide, in each and every case, an alternate assignment for pilots subject to the FAA's Age 60 Rule, such persons must be considered for reassignment (or for training prior to reassignment) to positions not covered by the Rule. Age must not be either a direct or indirect consideration; the 60 year-old pilot must be treated on the same basis as other employees or applicants for employment."

*Quoted in Monroe v. United Air Lines,* 27 Empl.Prac.Dec. (CCH) ¶ 52,230 (N.D.Ill. 1981) at 22,683. Thus, although Western may not be obligated to provide immediate employment for pilots retiring from captain positions, it cannot deny them the opportunities which it apparently affords to its other employees—the retention of seniority rights and the right to exercise them at such time as a vacancy occurs.

It bears repeating that the above analysis does not turn on the validity or invalidity of Western's seniority system. The validity of the system under § 4(f)(2) is not germane, given that it is not the operation of the seniority system which is alleged to have harmed the plaintiffs. Thus, I find it unnecessary to address the issue of whether the Supreme Court's recent decision in *American Tobacco Co. v. Patterson,* —— U.S. ——, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982), is applicable to this case.

## II. *Denial of Summary Judgment*

It follows from the reasoning set forth above that defendant's motion for summary judgment must be denied. As explained above, it appears that the roots of the alleged age discrimination lie outside of the seniority system. Western's motion for summary judgment relies solely on the seniority system as a defense to plaintiffs' claims of unlawful discrimination and that system does not provide a defense. Accordingly, I am unable to conclude that Western is entitled to summary judgment.

## III. *Reconsideration of Preliminary Injunctive Relief*

In this Circuit, a party seeking a preliminary injunction may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Los Angeles Memorial Coliseum Com'n v. N. F. L.,* 634 F.2d 1197, 1201 (9th Cir. 1980); *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 88 (9th Cir. 1975). The basic function of a preliminary injunction is to preserve the *status quo ante litem* pending a determination of the action on the merits. *Los Angeles Memorial Coliseum Com'n, supra,* 634 F.2d at 1200.

Plaintiffs have asked for preliminary injunctive relief in the form of reinstatement.[5] Based on the analysis of this case as set forth above and on equitable considerations, I conclude that plaintiffs should not be granted reinstatement pending trial. This is because Western's alleged discrimination consists not of denying plaintiffs particular positions, but of failing to treat them in the same manner in which other Western employees are treated. More precisely, Western's alleged discrimination lies in its failure to allow plaintiffs to retain employee status and seniority rights, even in the absence of immediate positions, when other employees are allowed to do so. For this reason, reinstatement appears to be a

---

**5.** Neither the motion for preliminary injunction nor the renewed motion for preliminary injunction and for reconsideration specified the precise nature of the preliminary injunctive relief sought. However, at oral argument, plaintiffs were unequivocal that what they seek is immediate reinstatement as second officers and not placement in a "pool" or other standby treatment. Under the ADEA and for purposes of preliminary injunctive relief, "reinstatement" is not an accurate characterization of the relief sought, since plaintiffs were terminated from positions as captains and not as second officers.

remedy which exceeds plaintiffs' present injury.[6]

In addition, even if reinstatement were an appropriate remedy for the injury alleged, it would not be warranted in that the balance of hardships does not tip sharply in favor of plaintiffs. Preliminary injunctive relief will not serve to preserve the *status quo ante litem*, in that none of the plaintiffs was employed as a second officer when this action was filed.[7] Moreover, all plaintiffs, except plaintiff Butler, were terminated by Western prior to the commencement of this action. In addition, Western claims that if plaintiffs were reinstated, certain incumbents might have to be discharged. The harshness of this result, particularly at the preliminary injunction stage, is another factor militating against it.

Plaintiffs have not requested preliminary injunctive relief other than reinstatement (*e.g.*, an order restoring their seniority and bidding rights) and the Court declines to fashion such a remedy at this time. First, while plaintiffs raise serious questions on the merits, the record is, as yet, relatively undeveloped. For example, the Court has only skeletal information regarding the creation of, or circumstances surrounding, the 737 Second Officer Pool. The existence of this "pool" appears to be a key element of plaintiffs' proof of discriminatory treatment and disparate impact. In addition, any limited injunctive relief which the Court might issue would pose numerous practical and administrative problems which should not be decided on the basis of the current, limited record. One such issue is what impact such relief would have on the retirement benefits currently being received by plaintiffs. In light of the weakness of the record, the practical problems which have yet to be considered and the fact that plaintiffs have not asked for any

preliminary injunctive relief other than reinstatement, I find it improper to fashion a more limited remedy at this time and decline to do so.

*Order*:

1. Plaintiffs' motion for reconsideration is granted and on reconsideration the motion for preliminary injunction is denied.

2. Western's motion for summary judgment is denied.

---

**6.** I continue to adhere to the view expressed in the Memorandum Decision that, for the purposes of determining these motions, plaintiffs were not entitled, under the neutral operation of Western's seniority system, to be awarded any of the vacancies which occurred prior to their reaching age 60.

**7.** *See* footnote 5, *ante.* Because this is not a true "reinstatement" case, plaintiffs appear to be seeking a mandatory preliminary injunction to which a more stringent standard applies than would be applicable in the case of prohibitory relief. *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979).