AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Plaintiff,

v.

TRANS WORLD AIRLINES, INC., Defendant.

Harold H. THURSTON, et al., Plaintiffs,

v.

TRANS WORLD AIRLINES, INC., et al., Defendants.

Nos. 78 Civ. 3707 (KTD), 79 Civ. 4915 (KTD).

United States District Court, S. D. New York.

Sept. 13, 1982.

---

Cohen, Weiss & Simon, New York City, for Air Line Pilots Ass'n, Intern.; Michael E. Abram, Jay P. Levy-Warren, New York City, of counsel.

Chadbourne, Parke, Whiteside & Wolff, New York City, for Trans World Airlines, Inc.; Donald I. Strauber, Henry J. Oechler, Jr., New York City, of counsel.

O'Donnell & Schwartz, New York City, for intervenors Vasilaros; Asher W. Schwartz, New York City, of counsel.

Haley, Bader & Potts, Chicago, Ill., Grau & Weiner, P. C., New York City, for Thurston plaintiffs; Raymond C. Fay, Alan M. Serwer, Susan D. Goland, Chicago, Ill., Leonard Grau, New York City, of counsel.

Michael Connolly, Gretchen Houston, Ivan Rivera, Jason Hegy, Paul D. Brenner, Washington, D. C., Saul Krenzel, New York City, for plaintiff-intervenor E. E. O. C.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Airline Pilots Association, International ("ALPA"), the bargaining representative of airline pilots and flight engineers, sued Trans World Airlines, Inc. ("TWA") alleging that amendments to the Age Discrimination and Employment Act ("ADEA") did not require TWA's implementation of a policy permitting flight engineers to serve past the age of sixty. TWA has also been sued by a group of pilots and the Equal Employment Opportunity Commission ("EEOC") who claim that TWA's policy that allows flight engineers past the age of sixty to continue in TWA's employ discriminates against pilots. Both cases have been consolidated and are before me now on motions by TWA for summary judgment. For the reasons that follow, TWA's motions are granted.

### I.

In 1978, Congress amended the ADEA to prohibit, *inter alia,* an employee's involuntary retirement before the age of seventy solely by reason of his age even if in accordance with a bona fide employee benefit plan.[1] Prior to this amendment, the ADEA allowed employers to compel retirement before the age of sixty-five if this was part of a bona fide employee benefit plan and was not a subterfuge to evade the purposes of the ADEA. *See United Air Lines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). The amended ADEA

---

1. In addition to enlarging the protected age group to include sixty-five to seventy year olds, the 1978 Amendments added new language to 28 U.S.C. 623(f)(2) which reads as follows:

 (f) It shall not be unlawful for an employer, employment agency, or labor organization—
 (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to

evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, *and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual . . . .*
(emphasis added to indicate new language).

permits involuntary retirement before age seventy only where:

1. "age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business",

2. "the differentiation is based on reasonable factors other than age," or

3. the forced retirement is in accordance with "a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension or insurance plan, which is not a subterfuge to evade the purposes of [the ADEA] . . . ," and was not as a result "of the age of the individual." 29 U.S.C. § 623(f) (1978).

In response to this change in the law, TWA commenced a review of its July, 1977 collective bargaining agreement ("the 1977 Working Agreement") with ALPA.[2] The 1977 Working Agreement included a Retirement Plan which provided for retirement at age sixty "unless written approval of the Company is granted for continuance in employment." Sections 4.1, 4.2 of the Retirement Plan. TWA Exhibit 3. This retirement date had been in effect for many years and, in fact, for the past two decades prior to 1978 no one over the age of sixty had served in the cockpit of a TWA aircraft. Crombie Affidavit ¶ 7. This is consistent with the policy of the Federal Aviation Administration ("FAA") which since 1960 has mandated retirement at age sixty for Captains and First Officers. 14 C.F.R. § 121.383(c). Several courts have viewed this age limitation as a bona fide occupational qualification for pilots within the meaning of the ADEA, 28 U.S.C. § 623(f)(1). *See, e.g., Starr v. FAA,* 589 F.2d 307, 313 (7th Cir. 1978); *Criswell v. Western Air Lines, Inc.,* 514 F.Supp. 384, 389 (C.D.Cal.1981).

The FAA has not imposed any age limitation on Flight Engineers, who are responsible for monitoring the mechanical, electrical and electronic functioning of the aircraft while it is in flight.

The 1978 ADEA amendments prompted TWA to determine whether or not members of the cockpit crew, which include on most commercial jets a Captain, a First Officer (co-pilot) and a First Engineer, fall within one of the exceptions to the new general rule that a company could not retire employees prior to age seventy. TWA met with representatives from ALPA to discuss the impact of the amendments but no consensus could be reached. On August 10, 1978, TWA went ahead and announced a new corporate policy in a bulletin to all TWA flight personnel. TWA Exhibit 5. The bulletin proclaimed "any cockpit crew member who is in a Flight Engineer status at age sixty may not be compelled to retire. The terms and conditions of employment for Flight Engineers who elect to work beyond age sixty will be governed by the provisions of the current Working Agreement." The bulletin further explained that "Flight Engineers will be subject to the provisions of the Federal Air Regulations applicable to TWA's operations and as such may not under any circumstances serve as a pilot after attaining age 60."

It is necessary to set forth TWA's implementation of this policy at some length. Flight Engineers who retired at age sixty after April 6, 1978, the effective date of the ADEA amendments, were notified by letter that they would be given the opportunity to be reinstated as a Flight Engineer. Flight Engineers reaching their 60th birthday after August 10, 1978 continued in that status. Apparently, although no new "retirement date" for Flight Engineers was specifically established under TWA's new policy, it is presumed to be age seventy.

Captains seeking to become Flight Engineers in order to continue working past age sixty had to change their status to Flight Engineer pursuant to bidding procedures set forth in the Working Agreement. The Working Agreement outlines these procedures that provide a mechanism for the possible deployment of TWA's entire pilot

---

**2.** New collective bargaining agreements were signed between ALPA and TWA on April, 1979 and April, 1982.

workforce. The procedures apply to any TWA pilot, under age sixty, who seeks to change status or location. The affidavit of Joseph Bryner, the director of Flight Crew Resources for TWA, describes these procedures. A pilot wishing to change his status or his domicile files a "Standing Bid" which shows his present status and domicile and lists his preferences for a new status. *See* TWA Exhibit 19. TWA is then obligated to publish bulletins listing the available vacancies on which pilots can bid. The number of vacancies, of course, changes with TWA's staffing and contractual needs. Available TWA pilot domiciles may include New York, Chicago, St. Louis, Kansas City, San Francisco and Los Angeles. As might be expected, in any bidding situation for a vacancy, the bidders frequently outnumber the vacancies and not all bids can be accommodated. In an effort to be fair, the Working Agreement provides that in each instance the selection process is based upon a pilot's seniority at TWA. This seniority system and the bidding procedures have existed at TWA since before 1967. Of course, with the advent of the opening of Flight Engineer jobs to pilots over age sixty, the procedures have received new found attention. A TWA Captain who chooses to downbid to Flight Engineer files a bid for such a vacancy prior to his 60th birthday. "If there is such a vacancy at the domicile where a downbidding Captain has requested to be assigned and that Captain has the highest seniority, then he is granted the bid in accordance with the provisions of the Working Agreement." Bryner Affidavit ¶ 11.

After the April 6th effective date of the 1978 ADEA amendments, there was an approximate four month period during which TWA did not post any Flight Engineer vacancies. On August 18, 1978, TWA listed twelve Flight Engineer vacancies that were to become effective on or about September 1, 1978. Two captains bid for these positions and were later awarded them. After being trained for the Flight Engineer position these captains switched jobs before they reached age sixty and consequently they were not forced to retire.

According to Bryner, as of February, 1982, approximately sixty former Captains have successfully downbid to Flight Engineer and thus have served in the cockpit after age sixty. Bryner Affidavit ¶ 18. Several TWA Captains, like Harold H. Thurston, who reached age sixty between April 6, 1978 and August 18, 1978 were unable to bid successfully for a Flight Engineer position. These Captains had to retire from pilot status, as required by FAA regulations, and from the company since no alternative positions became available before their 60th birthdays.

TWA's change in policy which allows Flight Engineers to continue in their jobs after age sixty, resulted in a number of lawsuits. Two of these suits are now consolidated before me. In the first case, *ALPA v. TWA,* 78 Civ. 3707, ALPA charges first that TWA's policy of allowing anyone to serve in the cockpit beyond age sixty constitutes a unilateral change in working conditions in violation of Section 6 of the Railway Labor Act ("RLA"), 45 U.S.C. § 156, and second, that ALPA is entitled to a declaratory judgment as to whether TWA's policy was required by the ADEA amendments. Certain "career" Flight Engineers [3] have intervened on the side of TWA in an effort to maintain the status quo.

In the second case, *Thurston v. TWA,* 79 Civ. 4915, several TWA Captains, including Thurston, have sued TWA alleging, *inter alia,* that TWA's mandatory retirement at age sixty is in violation of the ADEA and that ALPA and TWA have "conspired" to deprive the plaintiffs of their rights under the ADEA. In August, 1980 I permitted

---

**3.** Career Flight Engineers are those Flight Engineers employed by TWA who were on the seniority list on June 21, 1962, the date when TWA and the Flight Engineers International Association signed a Crew Compliment Agreement granting such Flight Engineers prior

rights to all Flight Engineer positions required by the Company's operations. Vasilaros Affidavit. The *Thurston* plaintiffs in their memorandum in opposition to the instant motion refer to these Flight Engineers as International Relief Officers.

the EEOC to intervene in this second case to represent the interests of the many similarly situated pilots and flight engineers.[4]

## II.

TWA now moves for summary judgment on the claims against it in both *ALPA v. TWA* and *Thurston v. TWA*. The intervening career Flight Engineers join in TWA's motion in *ALPA*. I will address TWA's motions in the context of each case separately.

### 1. *ALPA v. TWA*

The first cause of action in *ALPA v. TWA* alleges that TWA's "[e]limination of mandatory age sixty retirement for TWA flight deck crew constitutes a major change in existing terms and conditions of employment by TWA, as embodied in the Agreement and otherwise, in violation of the [Railway Labor Act], 45 U.S.C. § 152, 155 and 156." Complaint ¶ 15. The merits of this claim have already been addressed by me on a motion by ALPA to declare TWA's policy in violation of the RLA. On January 26, 1981, I ruled that "a major dispute between TWA and ALPA does not exist" because "TWA's new retirement policy is neither contrary to nor inconsistent with the agreement between TWA and ALPA." 506 F.Supp. 236, 238 (S.D.N.Y.1981). For this reason, the RLA procedures which must be followed before any action can be taken to alter existing terms and conditions of employees did not have to be followed. This reasoning is equally applicable here and leads to the conclusion that no violation of the RLA has occurred. Accordingly summary judgment is granted for TWA as to this first claim.

ALPA argues that in any event this court should retain jurisdiction over the RLA claims pending resolution of issues now before the TWA Pilot's System Board of Adjustment. *Cf. Order of Railway Conductors v. Pitney,* 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946). Four grievances are currently pending before the System Board which challenge the contractual right of TWA, under both the 1977 and 1979 working agreements, to employ flight engineers older than sixty. ALPA has placed these grievances in inactive status in order to obtain a judicial resolution of the claim by TWA that the ADEA precludes the forced retirement of flight engineers older than sixty. Under the circumstances, it appears that resolution of the parties' "minor dispute" is best left in the hands of the System Board as contemplated by the RLA. *See Rutland Railway Corp.,* 307 F.2d 21, 32 (2d Cir. 1962), *cert. denied,* 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963). No purpose would be served by this court retaining jurisdiction over this claim which has already been determined to be a minor dispute.

ALPA's second claim raises more subtle issues which call for an interpretation of the ADEA and strike to the heart of this entire controversy. ALPA seeks a declaratory judgment that the ADEA does not require TWA to retain Flight Engineers beyond the age of sixty. ALPA submits that the Working Agreement defines all TWA flight deck crew members as pilots and requires that all TWA pilots possess a currently effective commercial pilot's certificate and other pilot qualifications. Complaint ¶ 24. As a result, the FAA's regulation that no person may serve as a pilot on an airplane past his 60th birthday applies to all TWA flight deck crew members. Stated

---

4. A third case, *Cafferty v. TWA*, 80 Civ. 3481, was brought against TWA in the Western District of Missouri by a group of furloughed TWA Flight Engineers alleging that they should be reinstated in their jobs pending a determination from the National Mediation Board. The *Cafferty* plaintiffs argue that TWA should be compelled to negotiate the effects of TWA's policy of allowing Flight Engineers to serve beyond age sixty under the RLA. After *Cafferty* was

transferred to my docket, I granted TWA's motion to dismiss the complaint because TWA's age sixty policy did not violate the RLA as explained in an earlier decision of mine in *ALPA v. TWA*, 506 F.Supp. 236 (S.D.N.Y.1980). In *ALPA*, I had ruled that the dispute over TWA's new policy was not a "major" dispute to which the RLA requires that its mandatory bargaining procedures be applied.

differently, ALPA contends that retiring Flight Engineers at age sixty is conduct protected by the ADEA's bona fide occupational qualification exception. 29 U.S.C. § 623(f)(1).

ALPA also argues that TWA may retire Flight Engineers at sixty because such a policy is not covered by the 1978 amendment to the ADEA which provides that no such employee benefit plan shall require or permit the involuntary retirement of any individual in the protected age group because of his age. According to ALPA, the effective date of the ADEA amendments "is deferred . . . until termination of the [Working] Agreement or January 1, 1980, whichever occurs first." Complaint ¶ 25. Thus, ALPA contends that TWA's policy of retiring Flight Engineers at sixty is protected under the old law. This latter point has been mooted by the passage of time since there is now no question that the ADEA amendments have become effective. The only issue that remains is whether Flight Engineer retirement at age sixty is a bona fide occupational qualification within the meaning of the ADEA.

The simple answer to this question is no. ALPA concedes that the FAA regulation requiring pilots to retire at age sixty applies only to the Captain and First Officer, not the Flight Engineer. ALPA's Memorandum at p. 11. The Deputy Assistant Chief Counsel of the FAA explicitly states that the regulation is not applicable to Flight Engineers who do not perform pilot "services." TWA Exhibit 42. Because the FAA has seen fit not to place Flight Engineers within the scope of the age sixty rule, ALPA cannot effectively argue that mandatory retirement at age sixty is a bona fide occupational qualification for Flight Engineers. Additional support for this proposition is found in *Criswell v. Western Air Lines, Inc.,* 514 F.Supp. 384, 391 (C.D. Cal.1981), where the district court faced with the identical issue specifically ruled that retirement at age sixty "is not a bona fide occupational qualification . . . ."

ALPA's arguments to the contrary are unpersuasive. First, ALPA asserts that the distinctions in responsibility between the pilot, the co-pilot and the flight engineer are minimal. In a report by the Institute of Medicine, it was stated that the responsibilities of these three persons who occupy an airplane's cockpit "are specific but overlap considerably, and all involve tasks of information gathering, problem solving, decision making, psychomotor coordination, and transmission of information to the other components of a complex man-machine system." ALPA Exhibit J at p. 21. Thus, ALPA argues Flight Engineers need to have the same qualifications as pilots and should also be subject to the same age limitations.

Second, ALPA submits that the medical bases for the FAA age sixty rule for pilots has equal application for Flight Engineers as indicated by the greater number of Flight Engineer trainees over age sixty than under age sixty who failed to qualify for these positions.

Third, ALPA argues that insofar as the safety of a flight is concerned the Flight Engineer is a crucial member of the cockpit, no less so than the pilot. TWA's own flight operation department stated that the use of flight engineers younger than age sixty would be safer for TWA flight operations than using flight engineers older than sixty. *See* Frankum Deposition at 96–97, 110–111, 159, 162. Congress mandates that airlines operate their business with the 'highest degree' of care. *See Murnane v. American Airlines,* 667 F.2d 98 (D.C.Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982). This rigorous standard, according to ALPA, gives TWA the prerogative to establish its own standards of safety and to declare age sixty a bona fide occupational qualification for Flight Engineers.

ALPA's arguments must be rejected. Neither the FAA nor TWA has determined that an age sixty retirement date is a significant safety factor in flight operations. As the Court in *Murnane* reasoned, "Courts, in our view, do not possess the

expertise with which, in a cause presenting safety as the critical element, to supplant their judgments for those of the employer." 667 F.2d at 101. I would add that a court should defer on this question at least in the first instance, to the expertise of the federal agency responsible for regulating safety in the airline industry. Furthermore, despite whatever medical evidence ALPA can muster, the FAA is the expert in this area and is in a better position than this court to judge the physical demands placed upon the crew of an aircraft and the qualifications necessary to fulfill the various roles on board a plane. Although TWA may be able to create, through an independent assessment of safety risks, a bona fide occupational qualification, *see Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224 (1976); *Harriss v. Pan American World Airways, Inc.,* 649 F.2d 670 (9th Cir. 1980), there is no convincing evidence in the record that TWA should do so for Flight Engineers sixty and under. Even if such evidence existed, I see nothing in the ADEA or in the Working Agreement which requires TWA to establish such a qualification.

The FAA and the National Institute of Aging are presently considering the question of requiring cockpit crew members to retire at age sixty. It is possible that at some future date ALPA's views will be vindicated by these entities. Until that time, it appears that the ADEA prevents TWA from enforcing the Working Agreement's mandatory retirement at age sixty. Accordingly, TWA's motion for summary judgment on ALPA's second cause of action is granted.

### 2. *Thurston and EEOC v. TWA and ALPA*

The Working Agreement's mandatory retirement age of sixty for pilots is challenged in *Thurston* as violative of the ADEA. The plaintiffs in *Thurston* are three crew members, Thurston, C. Clark and Parkhill, who were mandatorily retired by TWA at age sixty. Plaintiff-Intervenor EEOC seeks relief on behalf of all other crew members whose ADEA rights may have been violated by TWA and ALPA. These other crew members (hereinafter referred to as "EEOC claimants") may be divided into two groups—eight Captains who have been mandatorily retired by TWA, and all Captains or First Officers who were required to downgrade to the lower paying position of Flight Engineer. All of the plaintiffs assert that ALPA has caused or attempted to cause TWA to discriminate on the basis of age, and that ALPA has discriminated against crew members based on age by, *inter alia,* failing to represent them and by limiting their employment opportunities. Finally, the *Thurston* plaintiffs contend that TWA and ALPA have retaliated against them for having challenged the instant actions.

TWA, joined by ALPA, moves for summary judgment in *Thurston* arguing that some of the plaintiffs have not demonstrated a *prima facie* case of age discrimination and that others who may have established a *prima facie* case were only victims of a nondiscriminatory bona fide seniority program. TWA also points to a ruling by the TWA System Board of Adjustment which rejected a grievance by plaintiff Thurston identical to the one he and other plaintiffs make here as proof of the failure of the plaintiffs' *prima facie* case. Finally, TWA points out that the implementation of its age sixty policy has not had a disparate impact on those pilots wishing to become Flight Engineers.

To establish a *prima facie* case of age discrimination under the ADEA a plaintiff must show:

1. he was a member of the protected age group;

2. he was terminated;

3. there was a vacancy in the position sought at the time he applied;

4. he was qualified for the position sought.

*McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[5] After

---

**5.** Plaintiffs offer an alternative formulation to this *McDonnell Douglas* test, to wit:

1. Plaintiff possesses the basic skills necessary for the performance of the job, and

the establishment of a *prima facie* case, the defendants must then "articulate some legitimate, nondiscriminatory reason for the employee's rejection . . . ." 411 U.S. at 802, 93 S.Ct. at 1824. A review of the various claims by the *Thurston* plaintiffs and the EEOC, along with the supporting proof, reveals that prongs one, two and four of the *McDonnell* test were facially satisfied. All of the plaintiffs and EEOC claimants are members of the protected age group, *i.e.*, between the age of forty and seventy; 29 U.S.C. § 631(a); each of them was terminated as pilots and forced to retire; most of them were "qualified for the position sought," *i.e.*, they were qualified to bid for and receive the position of Flight Engineer. For a variety of reasons none of them received a Flight Engineer job. However, a review of the circumstances underlying each individual pilot's failure to obtain the Flight Engineer job reveals that no age discrimination has occurred.

Plaintiff Thurston submitted a bid for a Flight Engineer's position in June, 1978 before his 60th birthday. This bid was rejected by the time he turned sixty because of the lack of vacancies and he was forced to retire.

Plaintiff C. Clark wrote to TWA in July, 1978, prior to his 60th birthday, stating his intention to serve as a flight crew member beyond age sixty. On August 3, 1978, TWA told Clark that subject to a change in policy he would not be able to serve as a Flight Engineer beyond age sixty and that no vacancies existed at that time.

In August, 1978 plaintiff Parkhill also made a bid for a Flight Engineer's position before reaching age sixty. This bid was rejected due to a lack of vacancies.

These three plaintiffs allege that their forced retirements were the result of age discrimination as evidenced by the fact that (1) certain TWA pilots under age sixty had been permitted to switch into Flight Engineer jobs, and (2) at least two employees under the age of sixty who were not working as Flight Engineers received positions as Flight Engineers without having placed any bids.

The pilots involved in this case were denied bids and forced to retire either because there were no Flight Engineer vacancies between the time they elected to bid and the time of their 60th birthdays or because no vacancies existed between the effective date of the ADEA amendments, April 6, 1978, and the effective date of the first Flight Engineer vacancy, September 1, 1978.[6] Two exceptions were C. Clark who declined to bid for any available Flight Engineer vacancies in accordance with the Working Agreement, and A. T. Humbles who bid on an available vacancy that was awarded, however, to someone with greater seniority. From these undisputed facts these plaintiffs and claimants cannot establish a *prima facie* case of discrimination solely because no job vacancy existed at the time they applied and were eligible for the job. TWA was legally obligated to remove these pilots at age sixty under the FAA regulations. TWA was not obligated, however, to offer these ex-pilots jobs which did not exist. To the extent jobs existed, TWA was justified in relying upon a seniority bidding system. *See Criswell v. Western Air Lines, Inc.*, 514 F.Supp. at 384.

Plaintiffs and the EEOC insist that a *prima facie* case can still be demonstrated despite the *McDonnell Douglas* formula by examining all of the evidence for either an inference of age discrimination or proof of a disparate impact. Support for these alternatives is derived from *Stone v. Western Air Lines, Inc.*, 544 F.Supp. 33 (C.D.Cal. 1982). In *Stone*, Judge Tashima, the author of *Criswell v. Western Air Lines, Inc.*, 514

---

2. the job was filled by someone else. This alternative is based on an ADEA case in the Second Circuit, *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914, 921 (2d Cir. 1981). I view the two tests as virtually identical.

**6.** Two other claimants, Enrich and John Clark, were initially awarded Flight Engineer bids but they failed to produce adequate proof at the time of training that they had passed the FAA Flight Engineer written exam. Thereafter, between the time they re-bid and their 60th birthdays there were no vacancies. TWA Exhibits 35 and 36.

F.Supp. at 384, was faced with the question of "whether age-sixty captains seeking to downbid to second officer positions may continue to retain their seniority rights after age sixty and exercise them when vacancies occur." At 35. The plaintiffs' claim in *Stone* was that pilots over sixty should be treated the same as flight deck employees who lose their jobs due to elimination of particular flights or positions, or due to medical disabilities and who are not severed from employment. These employees go on furlough or remain in a "displacement pool."

The district court found that the plaintiffs had presented sufficient evidence to support a theory of discrimination. Deposition testimony of employees indicated

"that Western routinely set aside and refused to consider the bids of captains nearing age sixty seeking second officer positions. Additionally, plaintiffs point to Western's Statement of Corporate Policy, adopted after the decision in *Criswell,* as manifesting continued intent to discriminate on the basis of age. Finally, they rely on evidence, first presented in *Criswell,* that a majority of pilot movement occurs not through bidding for vacancies but through displacement and other mechanisms. This point is underscored by evidence that Western and ALPA signed a special agreement, outside of the regular Pilot Agreement, for the sole purpose of maintaining the employee status of 737 second officers whose positions had been eliminated. No such efforts were made to accommodate age-sixty captains seeking second officer position."

At 36. From this evidence, the court concluded that only age-sixty captains seeking to downbid were severed while other employees were not. It was found that this established a *prima facie* case of discriminatory treatment. In addition, the court found evidence of a disparate impact in the company's program adopted outside of the Pilot Agreement for the 737 Second Officer Pool.

Although I do not subscribe to much of the court's reasoning in *Stone,* I find that it is distinguishable from the case at bar. The *Thurston* plaintiffs and EEOC claimants have not pointed to any evidence from which discriminatory treatment can be inferred. Plaintiffs do assert that other crew members move from one position to another without a "bid" and without regard to whether there is an existing "vacancy." This includes instances where pilots downgrade to Flight Engineer due to medical, training, disciplinary, or proficiency factors. Furthermore, Flight Engineers can simply stay in their jobs past age sixty without regard to the amount of bids and vacancies outstanding. Also, because the pilots must receive a bid for Flight Engineer before they reach age sixty or else retire, pilots who wish to avoid mandatory retirement are required to take an involuntary demotion before they reach age sixty.

■ I do not believe, however, that these practices constitute the discriminatory treatment found in *Stone.* There is no evidence here of a separate agreement between the union and the airline whereby a certain group of pilots maintain an employee status beyond age sixty while others do not. TWA is entitled to have a seniority system for each position in the cockpit. As will be discussed, TWA is following this seniority system in a nondiscriminatory fashion. The fact that pilots with medical problems may be downgraded to Flight Engineer regardless of the lack of any vacancies while pilots approaching age sixty must bid for such positions is not violative of the ADEA. Nor is TWA's forced retirement of those pilots who reach sixty at a time when there are no vacancies illegal. Although such a rule may seem harsh, it is applied impartially, unlike the situation in *Stone,* and is pursuant to a bona fide seniority system. TWA was not obligated to offer plaintiffs positions that did not exist, *see Criswell v. TWA,* 514 F.Supp. at 391 n.13, nor was it obligated to keep them on as dormant employees until openings in the Flight Engineer status arise. TWA did not afford such a privilege to other employees and it cannot be violative of the ADEA for

TWA not to do so for pilots over age sixty. The 1978 ADEA amendments were not designed to compel employers "to provide special working conditions for older workers to allow them to remain or become employed." H.R.95–527, p.12. Rather, the amendments require that "an employee's age be treated in a neutral fashion, neither facilitating nor hindering advancement, demotion, or discharge." *Parcinski v. Outlet Co.,* 673 F.2d 34, 37 (2d Cir. 1982). TWA has met these obligations.

 The ADEA provides that an employer may take action to observe the terms of a bona fide seniority system which is not a subterfuge to evade the purposes of the ADEA and which "does not require or permit the involuntary retirement" prior to age seventy. 29 U.S.C. § 623(f)(2). *See EEOC v. Home Insurance Co.,* 672 F.2d 252, 257 (2d Cir. 1982). The bidding procedures under the Working Agreement follow a seniority system which was instituted for nondiscriminatory reasons and is applied in a neutral manner. *See Cates v. Trans World Airlines, Inc.,* 561 F.2d 1064, 1074 (2d Cir. 1977). The seniority system was instituted well before the effective date of the ADEA amendments and is not in any way predicated upon age; rather, it depends solely on length of service with the company. Thus, any denial of Flight Engineer status to pilots resulted from the neutral application of this bona fide seniority system and not by discriminatory treatment on the basis of age. Their forced retirement at age sixty was due solely to their reaching that age while in the pilot status. As earlier stated, age sixty is a bona fide occupational qualification for airline pilots by virtue of the FAA regulations. *See Starr v.*

*FAA,* 589 F.2d at 313; *Criswell,* 514 F.Supp. at 389. TWA properly complied with the terms of the Working Agreement and the FAA regulations.[7]

 Finally, the plaintiffs and EEOC claimants assert that they have established, or could establish through additional discovery, a *prima facie* violation of the ADEA by a showing of disparate impact upon them. They cite in support of this proposition *Geller v. Markham,* in which the Second Circuit found that the disparate impact resulting from an employer's facially neutral practice was sufficient to establish a *prima facie* case of an ADEA violation. 635 F.2d 1027, 1032 (2d Cir. 1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). This argument, however, also must fail. Disparate impact alone, does not establish an ADEA *prima facie* case, when, as here, a seniority system is involved.[8]

*Geller* requires "that [the] principles with respect to discriminatory racist impact in violation of Title VII ... govern age discrimination cases instituted under [the ADEA, because] ... 'the (substantive) prohibitions of the ADEA were derived *in haec verba* from Title VII.'" *Id.* at 1032, *quoting Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). The Supreme Court, in a recent Title VII case addressed itself to a seniority system such as the one involved here, and expressly stated that "discriminatory impact is not alone sufficient to invalidate the system; actual intent to discriminate must be proved." *American Tobacco Co. v. Patterson,* —— U.S. ——, 102 S.Ct. 1534, 71 L.Ed.2d 748

---

7. Plaintiffs' argument that TWA may not raise this point on this motion is specious. Although a defense under 29 U.S.C. § 623(f)(2) was not raised in TWA's answer, plaintiffs have been made aware of it by TWA's counsel's response to plaintiffs' interrogatories on April 15, 1981. TWA Exhibit 47, p. 4. Thus, TWA can amend its answer under Fed.R.Civ.P. 15. To the extent that my decision on this motion rests on this defense, plaintiffs are not prejudiced thereby. Plaintiffs have had adequate opportunity through discovery since at least April, 1981, to develop any reply to this defense.

8. Moreover, the court notes that TWA provided evidence that virtually precludes a finding of disparate impact. For example, according to unrebutted evidence, eighty-three percent of those Captains seeking to serve beyond age sixty after April 6, 1978 have served or are now serving as Flight Engineers. It is not, however, necessary to address this issue absent any evidence of TWA's intent to cause disparate impact.

(1982). The claimants, however, failed to present any evidence of discriminatory intent, and, in fact, did not even allege the existence of any such intent. Accordingly, TWA and ALPA's motion for summary judgment in *Thurston* is granted.

### III.

In sum, TWA's motion for summary judgment in both *ALPA v. TWA,* 78 Civ. 3707 (KTD) and *Thurston v. TWA,* 79 Civ. 4915 (KTD) is granted. The complaints are dismissed.

SO ORDERED.