AIR LINE PILOTS ASSOCIATION, IN-
TERNATIONAL, Plaintiff-Appellant,

v.

TRANS WORLD AIRLINES, INC.,
Defendant-Appellee,

Harold H. Thurston, et al. and Nicholas
Vasilaros, et al., Defendants-Intervenors
Appellees.

Harold H. Thurston, Christopher J. Clark
and C. A. Parkhill,
Plaintiffs-Appellants,

Equal Employment Opportunity Commis-
sion, Plaintiff-Intervenor Appellant,

v.

Trans World Airlines, Inc. and Air Line
Pilots Association, International,
Defendants-Appellees.

Nos. 1013, 1014 and 1166, Dockets
82–6266, 82–6306 and 82–6280.

United States Court of Appeals,
Second Circuit.

Argued April 14, 1983.

Decided Aug. 1, 1983.

As Amended Aug. 23, 1983.

Jay P. Levy-Warren, New York City (Michael E. Abram, Cohen, Weiss & Simon, New York City, of counsel), for plaintiff-appellant Air Line Pilots Ass'n, Intern.

Susan Buckingham Reilly, Atty., E.E.O.C., Washington, D.C. (David L. Slate, Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, E.E.O.C., Washington, D.C., of counsel), for plaintiff-intervenor appellant E.E.O.C.

Henry J. Oechler, Jr., New York City (Donald I Strauber, Chadbourne, Parke, Whiteside & Wolff, New York City, of counsel), for defendant-appellee Trans World Airlines, Inc.

Raymond C. Fay, Chicago, Ill. (Alan M. Serwer, Susan D. Goland, Haley, Bader & Potts, Chicago, Ill., of counsel), for plaintiffs-appellants Harold H. Thurston, et al.

Asher W. Schwartz, New York City (O'Donnell & Schwartz, New York City, of counsel), for defendants-intervenors appellees Nicholas Vasilaros, et al.

Before WATERMAN, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

MANSFIELD, Circuit Judge:

These consolidated appeals from judgments in two separate lawsuits against Trans World Airlines, Inc. ("TWA") in the Southern District of New York, Kevin T. Duffy, Judge, grow out of actions taken by TWA on August 10, 1978, permitting flight deck crew members in the status of "flight engineer" to work until the age of 70 instead of requiring them, as had been TWA's

policy with respect to all such crew members (including captains and first officers), to retire at age 60. TWA made the change in response to Congress' amendment on April 6, 1978, of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1976 and Supp. V 1981) to prohibit mandatory retirement prior to age 70.

In one action the Air Line Pilots Association ("ALPA"), bargaining representative of the flight deck crew members, challenged TWA's policy, seeking a declaratory judgment that age under 60 is a bona fide occupational qualification ("BFOQ") for flight engineers within the meaning of § 623(f)(1) of the ADEA [1] and that TWA's action represented a unilateral change in working conditions in violation of the Railway Labor Act ("RLA"), 45 U.S.C. § 156–188 (1976 & Supp. V 1981).[2] ALPA appeals from a summary judgment in favor of TWA. In a second action (*Thurston, et al. v. TWA and ALPA*) a group of crew members (captains and first officers) formerly employed by TWA, who had been unsuccessful in securing flight engineer status before their 60th birthdays, claim that TWA's policy, instigated and encouraged by ALPA, discriminates against them in violation of the ADEA by refusing to permit

them to downbid to the position of flight engineer after they reached 60 years.[3] The crew member-plaintiffs appeal from a summary judgment dismissing their action.[4] We affirm the dismissal of ALPA's action and reverse the dismissal of the *Thurston* action.

The material facts are not in dispute.[5] TWA, a commercial aircraft carrier, employs approximately 3,000 "pilots"[6] on its wide-bodied planes in three (and sometimes four) cockpit positions. The "captain" commands the aircraft and is responsible for all phases of its operation. The "first officer" assists or relieves the captain as co-pilot. The "flight engineer" sits at a side-facing instrument panel and is primarily responsible for pre-flight inspection and in-flight monitoring of the mechanical, electrical, and electronic functioning of the aircraft.

A flight engineer does not operate the flight controls. Unlike the captain and first officer, who are required by the Federal Aviation Administration ("FAA") to have first class medical certification, the flight engineer needs only a second class medical certificate. The flight engineer does have crucial duties in emergencies, such as an all-engine flame-out but, should

---

1. Title 29 U.S.C. § 623(f)(1) provides in pertinent part:

   "It shall not be unlawful for an employer ... (1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business...."

2. A group of former TWA captains, including Harold Thurston, a private plaintiff in the second action against TWA, and a group of permanent flight engineers (Vasilaros, et al.), were granted intervenor status to support TWA's policy.

3. The Equal Employment Opportunity Commission ("EEOC") was granted intervenor status as a plaintiff in this action, on behalf of other involuntarily retired captains and crew members who were or would be adversely affected by TWA's requirement that captains and first officers assume flight engineer status before their 60th birthday or be mandatorily retired.

4. The court's decision of September 13, 1982, 547 F.Supp. 1221, incorporated the reasoning

of its prior decisions entered on November 17, 1980, 506 F.Supp. 234, and on January 26, 1981, 506 F.Supp. 236.

5. The parties did not enter into a stipulation of undisputed facts in the summary judgment proceedings below, but in their briefs and at oral argument the parties agreed that the case was in an appropriate posture for summary judgment as to liability.

6. Although most people probably think of the term "pilot" as limited to officers who handle the flight controls of a plane, the Working Agreement between ALPA and TWA defines all TWA flight deck crew members, including flight engineers, as "pilots" and requires that all TWA "pilots" possess a currently effective commercial pilot's certificate and other pilot qualifications. The FAA does not require flight engineers to possess pilot qualification. Certain "career" flight engineers, such as the defendant-intervenor-appellee in *ALPA v. TWA*, Nicholas Vasilaros, who were on the seniority list in 1962, are permitted by agreement to continue as flight engineers without pilot certification.

the flight engineer become incapacitated, the "fail-safe" principle of crew redundancy means that the first officer would perform the engineer's duties until the aircraft is brought to an emergency landing. In the event of incapacitation of the captain or first officer, the flight engineer may perform first officer duties except for take-off and landing. On certain long-distance flights there is a fourth crew member, an "International Relief Officer" ("IRO"), who acts as third in command and who performs, *inter alia,* first officer duties (excluding take-off and landing) and flight engineer duties.

Under an FAA regulation, 14 C.F.R. § 121.383(c) (1982), persons are prohibited from serving as "pilots" on a commercial aircraft carrier beyond age 60 ("Age 60 Rule"). Captains, first officers, and IRO's are considered "pilots" for purposes of the Age 60 Rule. The Age 60 Rule, however, does not apply to the third seat position of flight engineer.

The ADEA as amended prohibits an employer from discriminating against an employee between the ages of 40 and 70 "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . ." and from limiting, segregating, or classifying its employees "in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. §§ 623(a)(1), (a)(2). The Act further forbids the involuntary retirement of an employee within the protected age group "because of the age of such individual." *Id.* § 623(f)(2). It is also unlawful under the ADEA for a labor organization "to cause or attempt to cause an employer to discriminate against an individual in violation of [the Act] . . . ." *Id.* § 623(c)(3).

The ADEA, however, permits an employer or labor organization to take actions otherwise prohibited under the Act "where age

is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age," *id.* § 623(f)(1), or "to observe the terms of a bona fide seniority system . . . which is not a subterfuge to evade the purposes of [the Act] . . . ." *Id.* § 623(f)(2).

The parties agree for purposes of this litigation that the FAA Age 60 Rule may establish a "bona fide occupational qualification" ("BFOQ") for captains and first officers within the meaning of 29 U.S.C. § 623(f)(1) of the ADEA. Cf. e.g., *Starr v. FAA,* 589 F.2d 307, 313 (7th Cir.1978); *Rombough v. FAA,* 594 F.2d 893, 899 (2d Cir.1979) (upholding FAA's denial of exemption from Age 60 Rule as within agency's discretion); but cf. *Tuohy v. Ford Motor Co.,* 675 F.2d 842, 846 (6th Cir.1982).[7]

The "Retirement Plan for Pilots of Trans World Airlines, Inc.," ("Retirement Plan") negotiated as part of the 1977 Working Agreement between TWA and ALPA and incorporated in it by reference, provided that the "normal retirement date is the [pilot's][8] 60th birthday" and that "[pilots] must retire by their normal retirement date unless written approval of the company is granted for continuance in employment." Articles 4.1, 4.2. Article 4.3 of the agreement provides for the disbursement of retirement benefits in the event of employment past age 60. The agreement was re-negotiated in 1979 (with a non-renegotiation provision stating that the agreement could not be reopened until September 30, 1981) and again in April 1982. The retirement provisions remained unchanged. They had governed the relationship for many years prior to these agreements, and, historically, TWA had employed no flight crew member over the age of 60 on its airplanes until 1978.

Following Congress' April 6, 1978, amendment of the ADEA to prohibit, *inter alia,* the involuntary retirement of persons be-

**7.** ALPA originally opposed the FAA's Age 60 Rule as arbitrary and discriminatory. See *Air Line Pilots Association, International v. Quesada,* 276 F.2d 892 (2d Cir.1960).

**8.** See note 6, *supra.*

fore the age of 70 solely on the basis of age even if in accordance with a bona fide seniority plan, 29 U.S.C. § 623(f)(2), TWA failed to agree with ALPA on a revision of TWA's retirement program so that it would comply with the 1978 amendments. On August 10, 1978, TWA unilaterally issued a bulletin authorizing the continued or reactivated employment of "any cockpit crew member who is in a flight engineer status at age 60," retroactive to April 6, 1978. The term "flight engineer status" was not defined and the procedure whereby captains and first officers approaching 60 might acquire that status was not described. The bulletin simply provided that those flight deck officers who wanted to work past 60 would "be governed by the provisions of the current Working Agreement" and the FAA's Age 60 Rule for captains and first officers.

To implement its new policy TWA immediately reinstated those who had been in flight engineer status on their 60th birthdays and had been retired after April 6, 1978. Flight engineers reaching their 60th birthday after August 10, 1978 continued in that status. However, captains and first officers who might seek to downbid themselves to the position of flight engineer and then work as such beyond age 60 were required to change their status to flight engineer in accordance with the seniority and bidding procedures of the Working Agreement.

Under those procedures a captain or first officer approaching 60 years of age was required successfully to complete his downbid with an effective date as a flight engineer before he reached 60 years or else face mandatory retirement and removal of his name from the seniority list upon his reaching 60 years. Since the downbidding captain or first officer first had to pass the FAA written examination for flight engineer and then wait until a flight engineer vacancy opened up before his bid would become effective,[9] the procedure forced captains and first officers desiring to continue as flight engineers after 60 to downbid well before they reached 60 or lose out altogether.

Most of the 70 captains and first officers who have downbid for flight engineer positions successfully obtained that status before reaching 60. However, several, including plaintiff-appellant Harold Thurston, turned 60 between April 6 and September 1, 1978, when there were no flight engineer vacancies. Hence they could not secure a flight engineer bid before their 60th birthdays. Accordingly, they were mandatorily retired and their names were removed from the seniority list.[10]

Under TWA's 1977 Working Agreement with ALPA, captains or first officers who downbid to the position of flight engineer for reasons other than age were not similarly stripped of their seniority or severed from TWA. For example, those who are unable to maintain a first class medical certificate but are still medically qualified to become flight engineers may automatically displace or "bump" a less senior flight engineer without being required to bid for the downgraded position. If the captain or first officer lacks sufficient seniority to displace, he is not discharged; rather, he is entitled to go on unpaid medical leave for up to five years.

Similarly, the Working Agreement provides that a pilot whose position is eliminated at a domicile due to reductions in force may use his seniority to displace a less senior pilot in any status at his current or last former domicile, or in his current status anywhere in TWA's system. Like his medically disabled counterpart, the jobless pilot who lacks sufficient seniority to displace is not discharged. Rather, he is placed on furlough status which may extend for up to

---

**9.** Since 1980 TWA further requires that "whenever possible" downbidding captains be trained as flight engineers prior to the effective date of their flight engineer bids.

**10.** In addition to Harold Thurston, there were in the court below two other named plaintiffs, Clifton A. Parkhill and Christopher J. Clark, and 10 EEOC claimants. Three of the EEOC claimants have since settled. The remaining EEOC claimants are: A.M. Lusk, L.D. Bobzin, Robert Gowling, T.H. Widmayer, Alfred T. Humbles, Donald V. Roquemore, and Horace W. Lewis.

10 years during which time he continues to accrue seniority for purposes of a recall.

In addition, TWA, as a disciplinary measure in response to demonstrated incompetence, has not discharged incompetent pilots but has permanently transferred them to lower positions (such as that of flight engineer) for which they are qualified, without requiring the pilot to bid for a vacancy. This practice apparently routinely occurs without contractual provision.

Following TWA's August 10, 1978, bulletin, ALPA prevailed upon TWA to impose additional restrictions on downbidding captains and first officers approaching age 60, which were designed to make it more difficult for downbidders approaching 60 to acquire status as flight engineers. The first restriction put forth by ALPA and adopted by TWA in January 1980 requires successful captain downbidders to "fulfill their bids in a timely manner." Prior to this rule downbidding captains who had successfully bid for positions as flight engineers were permitted to function as captains until age 60 and then begin training as flight engineers. Under the new rule the downbidding captains are required to complete their training and assume their positions as flight engineers before reaching 60, thereby losing the difference in pay and responsibility they would have enjoyed if they had been allowed to complete their careers as captains up to 60 years of age. This rule resulted in the cancellation of bids awarded three downbidding EEOC plaintiffs and in their involuntary retirement.

The second restriction, also imposed in January 1980, relates to the time by which the downbidder must complete his written examination for the position of flight engineer. Previously the downbidder was placed at age 60 on an off-duty-without-pay status until he had passed the examination. Under the new rule the captain's downbid is cancelled unless he has passed the examination when reporting for training. This rule, operating with the "effective date" requirement, forced the retirement of two EEOC plaintiffs.

The district court ruled that TWA's elimination of its age 60 retirement policy for flight engineers was not a "major" dispute under the RLA and that age 60 for flight engineers was not a BFOQ within the meaning of the ADEA precluding TWA from continuing those over 60 in that status. The court accordingly awarded summary judgment to TWA in the *ALPA* action. 547 F.Supp. at 1226–28; 506 F.Supp. at 238; 506 F.Supp. at 234–36.

With respect to the *Thurston, et al.* and *EEOC* claim the district court determined that TWA was also entitled to summary judgment, concluding that since none of the *Thurston* plaintiffs or EEOC claimants could show that a flight engineer vacancy existed at the time he applied and was eligible for the job "TWA was legally obligated to remove these pilots at age sixty under the FAA regulations.... TWA was not obligated, however, to offer these ex-pilots jobs which did not exist. To the extent jobs existed, TWA was justified in relying upon a seniority bidding system." 547 F.Supp. at 1229.

## DISCUSSION

The parties agree that on these appeals there are no material issues of fact relating to liability and that the disputed liability issues may appropriately be disposed of by summary judgment. See *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir.), *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975); *Fitzgerald v. Westland Marine Corp.,* 369 F.2d 499, 500 (2d Cir. 1966).

### A. *ALPA v. TWA*

#### 1. *The "Major-Minor" Dispute Issue*

The first issue raised by ALPA is whether TWA's unilateral elimination of the mandatory age 60 retirement for flight engineers constitutes a "major" change in existing terms and conditions of employment in violation of the union's bargaining rights under § 6 of the Railway Labor Act, 45 U.S.C. § 156, which would be remediable by a federal court, or whether the change involves a "minor" dispute arising out of the application and interpretation of the existing agreement, which would be subject to

binding adjudication by the appropriate Adjustment Board.

■ To resolve the "major"-"minor" dispute controversy we look first

"to the collective bargaining agreement to determine whether a plausible interpretation would justify the carrier's action. A dispute is major if the carrier's contractual justification for its actions is 'obviously insubstantial.' On the other hand, a dispute is minor if the contract is 'reasonably susceptible' to the carrier's interpretation." *Local 553, Transport Workers Union v. Eastern Air Lines, Inc.*, 695 F.2d 668, 673 (2d Cir.1982) (citations omitted).

When it is difficult to determine whether the agreement between the parties "arguably supports" the carrier's actions, we look, in close cases, at the pragmatic effects of the carrier's action on working conditions to see whether the magnitude of the disruption caused by the carrier is "major" in a literal sense. *Id.* at 674. But when there is a "clearly governing provision in the present agreements," our inquiry need not range beyond the interpretation of the language of the agreement. *Rutland Railway Corp. v. Brotherhood of Locomotive Engineers,* 307 F.2d 21, 34 (2d Cir.1962), *cert. denied,* 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963).

■ Applying these standards, TWA's post-1978 retirement policy clearly does not give rise to a major dispute; at most there exists a minor dispute over the carrier's interpretation or application of the parties' 1977 Working Agreement. That agreement expressly allowed TWA to retain employees after age 60 by written waiver of the age limit, Retirement Plan, Article 4.2, and provided in Article 4.3 for the disbursement of retirement benefits in the event of employment past age 60. In view of this "clearly governing provision" in the agreement, *Rutland Railway, supra,* TWA's justification for its action is not "obviously insubstantial." *Local 553, supra,* 695 F.2d at 673. See also *Cafferty v. Trans World Airlines, Inc.,* 488 F.Supp. 1076, 1078 & n. 3 (W.D.Mo. 1980) (stating with respect to the same Working Agreement that "the [waiver] pro-vision [arguably] constitutes a standing consent by ALPA to the action taken by TWA in 1978").

ALPA argues that despite the provisions of the Agreement, no TWA flight engineer ever served past age 60 in the period between the adoption of the initial retirement plan in 1950 and the August 1978 change in policy. This longstanding practice, ALPA submits, established a clear understanding between the parties that the agreement required retirement at age 60. See *Brotherhood of Locomotive Firemen and Enginemen v. Southern Railway Co.,* 217 F.Supp. 58, 62 (D.D.C.1963), *aff'd,* 337 F.2d 127 (D.C. Cir.1964). We disagree.

Whatever the significance of TWA's practice of not invoking its discretionary power under the Agreement to waive the age 60 retirement policy, ALPA may not now seek to compel negotiations over that policy when, as Judge Duffy found, "(i) it had ample opportunity to do so when the 1979 Working Agreement was negotiated; and (ii) when the 1979 Working Agreement states that the entire Agreement shall remain in full force and effect through September 30, 1981 and may not be reopened under Section 6 of the RLA any sooner than 120 days prior to September 30, 1981 unless the parties mutually agree otherwise." 506 F.Supp. at 238. We have deemed such non-renegotiation provisions an essential "instrument for achieving industrial peace," *Seaboard World Airlines, Inc. v. TWU,* 443 F.2d 437, 439 (2d Cir.1971), and we will not turn them aside when the parties to the signing of the agreement were fully aware of the contested issue. Cf. *Flight Engineers' International Association v. American Airlines, Inc.,* 303 F.2d 5, 13 (5th Cir. 1962). Furthermore, since Judge Duffy's 1981 decision, ALPA signed another Working Agreement with TWA in April 1982 and again failed to negotiate over TWA's retirement policy for flight engineers. 547 F.Supp. at 1224 n. 2. If nothing else, ALPA has now waived any right it might have had to compel negotiation on a subject over which it decided not to negotiate on two occasions. Accordingly, we affirm the district court's grant of summary judgment in favor of TWA dismissing ALPA's claim

that the elimination of the age 60 retirement policy for flight engineers constitutes a "major" dispute.

### 2. The "Bona Fide Occupational Qualification" ("BFOQ") Issue

[3] ALPA next seeks a declaratory judgment that the 1978 amendments to the ADEA did not require retention of flight engineers past age 60 because that age is a "bona fide occupational qualification" for flight engineers within the meaning of 29 U.S.C. § 623(f)(1). At the outset we are met with a challenge to the district court's jurisdiction to adjudicate the merits of ALPA's claim, for it is unquestioned that the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, which provides that in "a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party," does not itself create any federal jurisdiction. The Declaratory Judgment Act provides an additional remedy in cases resting on some independent basis of federal jurisdiction. *Miller-Wohl Co. v. Commissioner of Labor and Industry, State of Montana,* 685 F.2d 1088, 1090 (9th Cir. 1982).

ALPA's pleadings assert jurisdiction under 28 U.S.C. §§ 1331 and 1336 and base its claim to federal question jurisdiction alternatively on two federal statutes: the RLA or the ADEA. Our determination that TWA's unilateral change in its retirement policy appears to be permitted by the Working Agreement, thereby constituting at most a minor dispute, necessarily disposes of the claim to jurisdiction under the RLA. A minor dispute is subject to binding adjudication by the appropriate Adjustment Board, which has exclusive jurisdiction to resolve questions of contract interpretation. "[C]ourts may not adjudicate the merits of these [minor] issues." *Local 553, supra,* 695 F.2d at 674–75; 45 U.S.C. § 153, First. Consequently, we will not enjoin a carrier from actions that have given rise to a minor dispute when the RLA "calls for the Adjustment Board to determine whether the carrier's action was permissible under the governing contract." *Id.* (citing *United Transportation Union v. Penn Central Transportation Co.,* 505 F.2d 542, 545 (3d Cir.1974) (per curiam)).

■■ Our intervention in the merits of this minor dispute would defeat the Adjustment Board's jurisdiction, a result directly contrary to the dispute resolution mechanism of the RLA. Although courts may take action to preserve a minor dispute for the Adjustment Board when the carrier's actions threaten irreparable injury to the union which would render a subsequent decision by the Board in the union's favor " 'an empty victory,' " *Local 553, supra,* 695 F.2d at 675 (quoting *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Railroad Co.,* 363 U.S. 528, 534, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1435 (1960)), the evidence is overwhelming that an Age 60 Rule for flight engineers is not reasonably necessary to insure safety standards and that ALPA's claim to the contrary must be rejected.[11] As of February 1982, TWA employed approximately 130 flight engineers over age 60. ALPA has pointed to no evidence indicating that any airline accident has ever been caused by the incapacitation of a flight engineer, much less an over-60 flight engineer. The first officer, and sometimes an additional International Relief Officer, is always there to take over the

---

11. Although ALPA argues that this dispute threatens the safety of its members, it admits that its action is motivated by economic, not just safety, concerns: "The continuation in employment of flight engineers over age 60 has necessarily deprived substantial numbers of furloughed pilots of work opportunities. Between August, 1979 and June, 1980 TWA laid-off approximately 375 pilots.... As of February, 1982, TWA employed approximately 130 flight engineers over age 60.... All incumbent flight engineers with lesser seniority than

this group have suffered a loss of the opportunity to obtain higher paying flight engineer assignments, and to obtain assignments with preferred working conditions." Brief for Plaintiff-Appellant ALPA pp. 10–11. Economic considerations, however, cannot be the basis for a BFOQ, when "precisely those considerations were among the targets of the Act." *Smallwood v. United Air Lines, Inc.,* 661 F.2d 303, 307 (4th Cir.1981), *cert. denied,* 456 U.S. 1007, 102 S.Ct. 2299, 73 L.Ed.2d 1302 (1982).

flight controls should the captain become incapacitated.

The FAA, the paramount agency charged with airline safety, has not imposed its Age 60 Rule on flight engineers. Indeed, the agency has announced an intention to reconsider its Age 60 Rule for captains and first officers, and, as one district court has noted, the FAA does not even apply its Age 60 Rule to its own pilots who fly the agency's fleet, which includes aircraft as large as Boeing 707s. *Criswell v. Western Air Lines, Inc.,* 514 F.Supp. 384, 390 n. 9 (C.D. Cal.1981), *aff'd,* 709 F.2d 544 (9th Cir.1983). Nor has TWA, which operates under a congressional mandate to maintain "the highest possible degree of safety," 49 U.S.C. § 1421(b), perceived any danger in employing flight engineers over age 60.

Furthermore, courts that have considered this issue have uniformly agreed that Age 60 for flight engineers is not reasonably necessary to airline safety. See, e.g., *Criswell v. Western Air Lines, Inc., supra,* 514 F.Supp. at 389–90, *aff'd,* 709 F.2d 544 (9th Cir.1983); *Monroe v. United Air Lines, Inc.,* 31 E.P.D. ¶ 33,330 (N.D.Ill.1983). That ALPA was a third-party defendant in the *Monroe* action, with a full and fair opportunity to litigate the BFOQ issue, might by itself provide grounds for dismissal of this meritless claim on well-established principles of collateral estoppel. See, e.g., *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In the absence of any showing that Age 60 is a BFOQ and thus that TWA's action threatens the union with irreparable injury, we hold that jurisdiction is lacking under the RLA to adjudicate the merits of ALPA's BFOQ claim.

The union argues in the alternative that we have jurisdiction to entertain the issue under the ADEA. ALPA reasons that because the ADEA makes it unlawful for a labor organization "to cause or attempt to cause an employer to discriminate against an individual in violation of this section," 29 U.S.C. § 623(c)(3), and because the ADEA contemplates the routine assertion by unions of the defense that employment practices are not unlawful by reason of a BFOQ, § 623(f)(1), even in circumstances where the employer has refused to comply with union requests to implement the qualification policy, the Act must also permit the *creation* of a BFOQ defense that may be adjudicated affirmatively by means of an action for a declaratory judgment. We disagree.

Even if a labor organization could assert a BFOQ defense in opposition to the employer's position (a dubious proposition for it is the employer, not the union, who sets occupational qualifications), the ADEA does not provide employers or labor unions with a cause of action to preempt the rights of employees by filing an anticipatory declaratory judgment action to establish a statutory defense. The ADEA protects the rights of "persons[s] aggrieved"—individual employees and applicants for employment—between 40 and 70 years of age. 29 U.S.C. §§ 623(a)–(e), 626(c)(1), 631. A union may have standing under the ADEA to vindicate the rights of its members that the ADEA is designed to protect. See *Warth v. Seldin,* 422 U.S. 490, 500 & n. 12, 511, 95 S.Ct. 2197, 2205–2206 & n. 12, 2211, 45 L.Ed.2d 343 (1975); cf. *International Woodworkers of America v. Georgia-Pacific,* 568 F.2d 64, 66–67 (8th Cir.1977) (union has associational standing to file suit under Title VII to end discrimination); *EEOC v. Emerson Electric Co.,* 539 F.Supp. 153, 155 (E.D.Mo.1982) (same). Here, however, ALPA is not suing "to promote employment of older persons," which is the purpose of the Act, 29 U.S.C. § 621(b). On the contrary, it seeks to use the ADEA to cut off the rights of the older flight engineers. This ALPA may not do. The basic objective of the ADEA is to outlaw unjustifiable discrimination based on age. It follows that no cause of action to force an employer to discriminate through the establishment of an age-related BFOQ can "arise under" the ADEA. Cf. *Chrysler Corp. v. Brown,* 441 U.S. 281, 290–94, 99 S.Ct. 1705, 1711–1714, 60 L.Ed.2d 208 (1979) (Chrysler cannot sue under FOIA, a disclosure statute, to force *non*disclosure); *Von Aulock v. Smith,* 548 F.Supp. 196, 197 (D.D.C.1982) (employees lack standing to seek declaration that employer's affirmative de-

fense under the ADEA may be invalid); *Wohl Shoe Company v. Wirtz,* 246 F.Supp. 821, 822 (E.D.Mo.1965); see also *St. Louis, Missouri, Paper Carriers Union No. 450 v. Pulitzer Publishing Co.,* 309 F.2d 716, 718 (8th Cir.1962).

Aside from the fact that the purpose of the ADEA would be frustrated by ALPA's declaratory action, the action would also by-pass the statutory procedure provided for by the ADEA, which is based on the prior filing of a charge of unlawful discrimination with the EEOC beginning a process of "conciliation, conference, and persuasion." 29 U.S.C. § 626(d).[12] See also 29 U.S.C. § 633(b). A potential ADEA defendant cannot be permitted to invoke the declaratory judgment procedure "to preempt and prejudge issues that are committed for initial decision to an administrative body." *Utah PSC v. Wycoff Company, Inc.,* 344 U.S. 237, 241, 246, 73 S.Ct. 236, 239, 241, 97 L.Ed. 291 (1952); cf. *Katzenbach v. McClung,* 379 U.S. 294, 296, 85 S.Ct. 377, 379, 13 L.Ed.2d 290 (1964).

■ The BFOQ is an extremely narrow exception to the general prohibition against age discrimination. *Orzel v. City of Wauwatosa Fire Dep't,* 697 F.2d 743, 748 (7th Cir.1983); 29 C.F.R. § 860.102(b) (1982); cf. *Dothard v. Rawlinson,* 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977) (sex based discrimination). The defense must relate to the actual ability of the employee to perform his or her assigned job. *Smallwood v. United Air Lines, Inc.,* 661 F.2d 303, 307 (4th Cir.1981); cert. denied, 456 U.S. 1007, 102 S.Ct. 2299, 73 L.Ed.2d 1302 (1982); *Gathercole v. Global Associates,* 545 F.Supp. 1280, 1282 (N.D.Cal.1982). The BFOQ, therefore, cannot be established without proof relating to the inability of medical science to "predict, on an individual basis, the likelihood that a pilot who has reached age 60 will become incapacitated during flight." *Tuohy v. Ford Motor Co.,* 675 F.2d 842, 846 (6th Cir.1982). We will not strain to expand our discretionary jurisdiction to issue a declaratory judgment in aid of this narrow BFOQ defense, particularly absent any showing of legitimate safety concerns.

In sum, the purpose and structure of the ADEA do not permit us to provide an avenue for implementing ALPA's attempt to use the Act to cut off the rights of its older members. Accordingly, we hold that we lack jurisdiction under either the RLA or the ADEA to entertain ALPA's declaratory judgment action. Dismissal of it must therefore be affirmed.

### B. *THURSTON AND EEOC v. TWA AND ALPA*

Those appellants who were prevented by the Age 60 Rule from downbidding from captain to flight engineer contend that the district court erred by adhering woodenly to the formula prescribed by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for establishing a prima facie case of discriminatory treatment and by failing to consider their direct evidence of an age-based differentiation in the treatment of downbidding captains and first officers. Appellants also argue that the district court erred in holding that they could not establish a violation of the ADEA under a disparate impact theory. Finally, they maintain that the court further erred in holding that TWA's actions fell within the exceptions provided by 29 U.S.C. § 623(f) of the Act. Consideration of these claims requires a brief discussion of the governing legal principles of discrimination law.

■ A plaintiff has the initial burden of offering adequate evidence to raise an inference that an employment decision was based on discriminatory criteria illegal under the Act. Once this burden is discharged the plaintiff has made out a prima facie case. Then the defendant must come forward and articulate some legitimate, nondiscriminatory reason for the employer's actions. The plaintiff thereafter must, in order to prevail, prove that the defendant's

---

12. Timely filing of a charge with the EEOC is a jurisdictional prerequisite to the maintenance of a Title VII action. *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 555 n. 4, 97 S.Ct. 1885, 1887 n. 4, 52 L.Ed.2d 571 (1977); *De Figueiredo v. TWA,* 527 F.Supp. 933, 934–35 (S.D.N.Y.1981).

proffered reason is merely a pretext for discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977); *Pena v. Brattleboro Retreat,* 702 F.2d 322, 323–24 (2d Cir.1983); *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 919 (2d Cir. 1981).

Discriminatory or disparate *treatment* in violation of the ADEA occurs when an employer treats some people less favorably than others because of age. While proof of a discriminatory motive is critical, "it can in some situations be inferred from the mere fact of differences in treatment." *Geller v. Markham,* 635 F.2d 1027, 1031 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). A prima facie case of discriminatory treatment under the ADEA (as under Title VII) may ordinarily be made out by meeting the four requirements set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *Geller v. Markham, supra,* 635 F.2d at 1032; *Grant v. Bethlehem Steel Corp.,* 635 F.2d 1007, 1014 (2d Cir.1980), *cert. denied,* 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981). These requirements establish that the plaintiff has not suffered an adverse employment decision for either of the two most common legitimate reasons: lack of qualifications or the absence of a vacancy in the position sought. *Texas Department of Community Affairs v. Burdine, supra,* 450 U.S. at 253–54, 101 S.Ct. at 1093–1094; *International Brotherhood of Teamsters v. United States, supra,* 431 U.S. at 358 n. 44, 97 S.Ct. at 1866 n. 44; *Stanojev v. Ebasco Services, supra,* 643 F.2d at 919–20. Applying the *McDonnell Douglas* formula here, it is clear, as the district court held, that appellants could not establish that there were flight engineer vacancies at the time they applied to transfer.

The *McDonnell Douglas* formula, however, is "not necessarily applicable in every respect to differing factual situations," *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 803 n. 13, 93 S.Ct. at 1824 n. 13. Nor is it "an inflexible rule," *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 575, 98 S.Ct. 2943, 2948, 57 L.Ed.2d 957 (1978); *accord Texas Department of Community Affairs v. Burdine, supra,* 450 U.S. at 253–54 n. 6, 101 S.Ct. at 1093–94 n. 6; *International Brotherhood of Teamsters v. United States, supra,* 431 U.S. at 358, 97 S.Ct. at 1866. We stated in a Title VII context:

> "The four *McDonnell Douglas* requirements . . . do not represent the exclusive method of showing disparate treatment under Title VII. . . . [A] court need not adhere stubbornly to that case's specific formulae when common sense dictates the same result on the basis of alternative formulae." *Grant v. Bethlehem Steel Corp., supra,* 635 F.2d at 1014.

See also, *Garner v. Boorstin,* 690 F.2d 1034, 1036 n. 4 (D.C.Cir.1982); *Stanojev v. Ebasco Services, Inc., supra,* 643 F.2d at 920–21. A plaintiff is not barred by the *McDonnell Douglas* method from making out a prima facie case of age discrimination by alternative means, such as *direct* proof that an employer discriminates on the basis of age. *Stanojev, supra,* 643 F.2d at 921; see also *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1014 & n. 18 (1st Cir.1979).

Plaintiffs in the present case took advantage of this alternative method of making out a prima facie case. Their evidence revealed that TWA grants the downgrading requests of all pilots with sufficient seniority except those of captains and first officers who reach age 60. This direct evidence of a differentiation based solely on age is sufficient to give rise to an inference of discriminatory motive, see *Geller v. Markham, supra,* 635 F.2d at 1031, and establishes, therefore, a prima facie case of discriminatory treatment. See *Stanojev, supra,* 643 F.2d at 921; *Stone v. Western Air Lines, Inc.,* 544 F.Supp. 33, 37 (C.D.Cal. 1982).[13]

---

**13.** In light of our holding that the appellants have made out a prima facie case of discriminatory treatment under the ADEA, it is unnecessary for us to consider whether appellants could establish their discrimination claim under an alternative theory of discriminatory impact.

TWA argues in reply that even under this alternative formula for raising an inference of discriminatory treatment appellants failed to make out a prima facie case, since most captains and first officers seeking to downbid to flight engineer positions have been successful, which negates the "critical" element of discriminatory motive. We disagree. That some captains were successful in complying with the company's discriminatory transfer policy—and then at the price of an early demotion—cannot excuse the denial of equal opportunity to other members of the protected class. Cf. *Furnco Construction Corp. v. Waters, supra,* 438 U.S. at 579, 98 S.Ct. at 2950. As the Supreme Court recently stated in *Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982),

> "It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." *Id.* 102 S.Ct. at 2535.

Likewise, Congress never intended favorable treatment of some members of a plaintiffs' age group to excuse discrimination against others. The ADEA, like Title VII, "does not permit the victim of a facially discriminatory policy to be told that he has not been wronged because other persons of his or her [protected class] ... were hired.... Every *individual* employee is protected against ... discriminatory treatment...." Id. (emphasis in original).[14]

TWA and ALPA rely principally on two statutory defenses to rebut appellants' prima facie case. First, TWA asserts that its contested practices are part of a bona fide seniority system and thus liability is foreclosed under 29 U.S.C. § 623(f)(2). Appellants, however, do not challenge the operation of the seniority system, but their sum-

mary exclusion from it at age 60. The employment practice at issue in this lawsuit—the severing of age 60 captains from the company—is in no way mandated by the negotiated seniority system. That system provides only that seniority rights shall be forfeited upon severance from the company, but it does not, and lawfully cannot, specify that pilots who attain age 60 shall be severed. See *id.* § 623(f)(2) (no bona fide seniority system "shall require or permit the involuntary retirement of any individual ... [protected under the Act] because of the age of such individual"). TWA's practice, "which equates involuntary retirement as a captain at age 60 with a complete severance from the company," *Stone v. Western, supra,* 544 F.Supp. at 37, is not part of a bona fide seniority system. The bona fide seniority defense is therefore unavailable to TWA as a matter of law. See *Johnson v. American Airlines, Inc.,* Nos. CA–3–80–434–D and CA–3–81–1020–D (N.D.Tex. filed Feb. 22, 1983).[15]

Second, ALPA argues that since age under 60 is a lawful BFOQ for captains to continue as such, they may be precluded from downbidding after 60 to positions for which age 60 is *not* a BFOQ, i.e., flight engineers, by § 623(f)(1), which provides that "[i]t shall not be unlawful ... to take any action otherwise prohibited under [the Act] ... where age is a bona fide occupational qualification ...." In support of this position ALPA relies on an expansive reading of the phrase "take any action otherwise prohibited" which it contends is justified by the contrasting language of another section of the statute, § 623(f)(2) and by the legislative history of the statute. We cannot agree.

It is true that § 623(f)(2),[16] unlike § 623(f)(1), contains an explicit prohibition

---

**14.** " '[T]he [substantive] prohibitions of the ADEA were derived *in haec verba* from Title VII,' " *Geller v. Markham, supra,* 635 F.2d at 1032 (quoting *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978)).

**15.** Since we conclude that TWA's compliance with a bona fide seniority system cannot establish a justification under § 623(f)(2) for the extinguishment of appellants' seniority at age 60, *a fortiori* the seniority system cannot estab-

lish a defense under the exception contained in § 623(f)(1) for a "reasonable factor other than age."

**16.** Section 623(f)(2) provides in pertinent part:
"It shall not be unlawful for an employer...
(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except

against involuntary retirement on the basis of age, and that in withdrawing a proposed amendment to § 623(f)(1) that would have expressly allowed mandatory retirement, the Conference Committee report stated that "[t]he conferees agree that the amendment neither added to nor worked any change upon present law." H.Conf.Rep. No. 95–950, 95th Cong., 2d Sess., 7, *reprinted in* 1978 U.S.Code Cong. & Ad.News 504, 528–29. The House Report on the ADEA also provides:

> "This legislation does not require employers to provide *special working conditions* for older workers to allow them to remain or become employed. While special jobs, part-time employment, retraining and transfers to less physically demanding jobs may be of great benefit to the older employees and the employer alike, these activities are not required by this legislation." H.R.Rep. No. 527, 95th Cong., 1st Sess. 12. (Emphasis supplied).

From this ALPA reasons that Congress was aware that when an employee ceases because of a BFOQ requirement to qualify for one type of job (captain or first officer in the present case) the employer may sever his employment completely while permitting others who are likewise unqualified for different reasons to continue their employment in a downgraded capacity.

ALPA's argument is unpersuasive. The terms of § 623(f)(1) plainly reveal its purpose, which is to excuse only those age-based actions against employees that are related to the "particular job" (in this case captain or first officer). The Senate Report makes this clear. S.Rep. No. 493, 95th Cong., 2d Sess., 10–11, *reprinted in* 1978 U.S.Code Cong. & Ad.News 513–14. See also H.R.Rep. No. 527, *supra,* at 12.

That age less than 60 is a BFOQ for the particular job of captain or first officer provides no license for TWA to discriminate against those over 60 who wish to transfer to positions as flight engineers, for which age 60 is *not* a BFOQ, by permitting other captains and first officers to do so. To hold otherwise would frustrate the purpose of the ADEA, which is "to promote employ-

ment of older persons" and "to prohibit arbitrary age discrimination in employment," 29 U.S.C. § 621(b), and the purpose of the 1978 amendments, which is "to protect older workers from involuntary retirement, . . . to insure that older individuals who desire to work will not be denied employment opportunities solely on the basis of age." S.Rep. No. 493, *supra,* at 1, *reprinted in* 1978 U.S.Code Cong. & Ad.News 504; see also H.R.Rep. No. 527, *supra,* at 1, 2.

Because the BFOQ provision creates an exception to the statute's general prohibition against discrimination based on age, it must be narrowly construed and may be invoked only if an employer proves "plainly and unmistakably" that its employment practice meets the "terms and spirit" of the remedial legislation. *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945) (construing the Fair Labor Standards Act); *Orzel v. City of Wauwatosa,* 697 F.2d 743, 748 (7th Cir.1983) (BFOQ exceptions to ADEA must be narrowly construed). ALPA's expansive reading of § 623(f)(1) does not comply with these expressed purposes of ADEA. On the contrary it would create an exception that would swallow the Act. Under ALPA's interpretation, for example, a company could lawfully provide fewer retirement benefits to captains retiring at age 60 than to other retiring employees, simply because the position of captain is subject to an age 60 BFOQ. Clearly Congress did not intend to permit such a result any more than it intended to permit an age-based refusal to consider a transfer application submitted by a 60-year old downbidding captain for a flight engineer position, merely because age 60 is a BFOQ for the captain's former job, when the company permits all younger captains who can no longer serve as captains to transfer to the position of flight engineer.

The ADEA requires "that an employee's age be treated in a neutral fashion, neither facilitating nor hindering advancement, demotion, or discharge." *Parcinski v. Outlet Co.,* 673 F.2d 34, 37 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 725, 74

that no such employee benefit plan shall ex-

cuse the failure to hire any individual . . . ."

L.Ed.2d 950 (1983). We conclude that TWA's age-based transfer policy hindered appellants' "demotion," depriving them of the "privilege[ ] of [continuing] employment" after age 60 and denying them "employment opportunities" in violation of §§ 623(a)(1) and (a)(2) of the ADEA.

Our holding does not require TWA to provide "special working conditions for older workers to allow them to remain or become employed." H.R.Rep. No. 527, *supra*, at 12; *Parcinski v. Outlet Co., supra*, 673 F.2d at 37. Appellants do not ask for "special treatment," *Parcinski, supra*; rather, they merely seek the same treatment accorded all younger captains and first officers who become unable to serve in their former capacities for non-age reasons. There is nothing "special" or "preferential" about equal treatment.

Nor can TWA avoid its ADEA obligations on the ground that downgrading of captains to the position of flight engineer might in some instances involve some retraining or relocation. TWA retains and relocates all employees, including flight engineers who are over 60, except for captains and first officers who have reached 60. This action is a conscious refusal on the part of TWA to retain or relocate age 60 captains and first officers solely because of their age, in violation of the ADEA. An employer's conscious refusal to consider retaining or downgrading a plaintiff because of his age violates the Act. See, e.g., *Williams v. General Motors Corp.*, 656 F.2d 120, 129–30 (5th Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982); *EEOC v. TWA*, 544 F.Supp. 1187, 1218 (S.D.N.Y.1982).

Nor does our holding result, as ALPA argues, in the elimination of mandatory retirement before age 70. An employer can lawfully retire an employee because he is beyond the age established as a BFOQ for his position provided that, unlike the situation here, the employer's refusal to consider the employee's request for alternative assignments is not discriminatory. *Compare Coates v. National Cash Register Co.*, 433 F.Supp. 655, 661 (W.D.Va.1977) (termination for lack of training unlawful when employees were chosen for training on the basis of age), *with Smith v. World Book-Childcraft Int'l, Inc.*, 502 F.Supp. 96, 98–99 (N.D.Ill.1980) (denial of transfer request by terminated employees lawful under the ADEA when no position was available and failure to transfer was not predicated on impermissible factors).[17]

In short, because TWA routinely accommodates other employees who seek to downgrade to flight engineer for non-age reasons and has failed to come forward with a permissible reason for its refusal to accord the same treatment to age-60 captains and first officers, the *Thurston* litigants and the EEOC claimants must prevail on their ADEA claim.[18] The sole reason for its discrimination against age-60 captains and first officers is their age; this is prohibited by the ADEA. Accordingly, we reverse and remand the case to the district court for the entry of judgment for appellants against TWA and ALPA, Fed.R.Civ.P. 56(c), as we have power to do. *Abrams v. Occidental Petroleum Corp.*, 450 F.2d 157, 165–66 (2d Cir.1971), *aff'd sub nom. Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973); *International Longshoremen's Ass'n, AFL–CIO v. Seatrain*

---

**17.** TWA's remaining claim that no statutory violation has been established as to Captain Thurston because his contractual grievance was denied by the TWA System Board of Adjustment may be dealt with summarily. The Board's determination of Thurston's rights under the collective bargaining agreement did not resolve any issue pertaining to his claim that his forced retirement violated the ADEA. As the arbitrator expressly stated: "It must be emphasized ... that in deciding this case, the System Board renders no opinion with respect to any *legal* rights that Captain Thurston may

have under the ADEA." Joint App. 530 (emphasis in original). Cf. *Alexander v. Gardner-Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (Title VII rights and remedies are distinct from and independent of those secured through collective bargaining).

**18.** Because we determine that TWA and ALPA have failed to come forward with a legitimate, nondiscriminatory reason for their disparate treatment of appellants, we need not consider the third step in the *Burdine* analysis, whether the defendants' reasons were pretextual.

*Lines, Inc.,* 326 F.2d 916, 921 n. 2 (2d Cir. 1964).

In response to ALPA's contention that summary judgment may not be entered against it because of its status as a union, the ADEA expressly prohibits unions, not just employers, from causing or attempting to cause an employer to engage in unlawful discrimination under § 623(c)(3) of the ADEA. Cf. 42 U.S.C. § 2000e–2(c)(3) (Title VII); *Stamford Board of Education v. Stamford Education Association,* 697 F.2d 70, 73 (2d Cir.1982). The evidence is undisputed that ALPA caused TWA to institute the requirement that successful downbidders "fulfill their bids in a timely manner," resulting in the cancellation of bids awarded three downbidding EEOC plaintiffs who were unable to complete their training and assume positions as flight engineers before reaching age 60. (JA 1064–1066, 1069, 1074–77). Nor is it disputed that after the 1978 ADEA amendments prohibited mandatory retirement before 70 of employees in positions for which age less than 70 was not a BFOQ, ALPA negotiated, signed, and administered a Working Agreement which retained by incorporation through express reference clauses from the 1977 Retirement Plan for Pilots requiring retirement of all flight deck personnel at 60. Retirement Plan for Pilots, Articles 4.1, 4.2. When a union becomes a party to a discriminatory provision in a collective bargaining agreement binding the employer to an unlawful practice, the union's conduct in aiding and abetting the employer to discriminate against employees renders it independently liable for violation of the ADEA, 29 U.S.C. § 623(c)(3). Cf. *Patterson v. American Tobacco,* 535 F.2d 257, 270 (4th Cir.) (Title VII), *cert. denied,* 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); *Taylor v. Armco Steel Corp.,* 373 F.Supp. 885 (S.D.Tex.1973) (same); Note, *Union Liability for Employer Discrimination,* 93 Harv.L.Rev. 702, 704–05 (1980).

Since ALPA actively campaigned to persuade TWA to retain its age-60 retirement policy for all flight deck positions, opposed TWA's unilateral action in August 1978 to attempt partial compliance with the ADEA and induced TWA to impose further discriminatory restrictions on captains seeking to downbid to flight engineer status, ALPA is liable under 29 U.S.C. § 623(c)(3) to the EEOC plaintiffs who were damaged by its conduct.[19]

## C. *RELIEF*

### 1. *TWA*

Appellants have requested an award of back pay, liquidated damages, and appropriate injunctive relief against TWA. Amended Complaint ¶ 1–11, Joint App., at 66–68. Liquidated or double damages, which are defined as an amount equal to the pecuniary losses sustained by way of lost wages, salary increases and other benefits, 29 U.S.C. § 216(b) (incorporated by reference in *id.* § 626(b)); *Koyen v. Consolidated Edison Company of New York,* 560 F.Supp. 1161, 1164 (S.D.N.Y.1983), are available under the ADEA "only in cases of willful violations." *Id.* § 626(b). Congress has provided no statutory definition of "willfulness," however, and the legislative history of the ADEA is silent on this point. *Wehr v. Burroughs Corp.,* 619 F.2d 276, 282 (3d Cir.1980). As we indicated in *Goodman v. Heublein, Inc.,* 645 F.2d 127 (2d Cir.1981), in a case based on discriminatory treatment, such as the present one, plaintiffs need not prove a specific intent to violate the ADEA; it is sufficient to establish that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA. *Id.* at 131. The reason is that "[i]n a discriminatory treatment case . . . an employer's action, if taken *because of* an impermissible factor such as age, cannot be the result of negligence, mistake, or other innocent reason." *Id.* at 131 n. 6 (emphasis in original).

---

**19.** Our conclusion that ALPA's actions in signing the post-1978 Working Agreements and in causing TWA to implement other restrictions on the downbidding older captains and flight engineers render it liable under § 623(c)(3) makes it unnecessary for us to consider whether the First Amendment bars consideration of ALPA's liability based on its filing a lawsuit against TWA. See *California Motor Transport v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

Applying these principles, TWA was clearly aware of the 1978 ADEA amendments; indeed it was required to post them, 29 U.S.C. § 627. Its attempt to escape full compliance by authorizing restricted downbidding by captains and first officers approaching 60 does not relieve it of liability for liquidated damages based on its continued discrimination against them through these unlawful restrictions. *Goodman v. Heublein, supra; Wehr v. Burroughs Corp., supra.*

### 2. ALPA

ALPA argues that the remedial scheme of the ADEA, which incorporates that of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–218; *Lorillard v. Pons,* 434 U.S. 575, 582, 98 S.Ct. 866, 871, 55 L.Ed.2d 40 (1978), does not permit actions to recover monetary damages, including back pay, against a labor organization. We agree. Under the FLSA employees may bring actions to recover money damages against employers, *id.* § 216(b), and the term "employer" in FLSA expressly excludes labor organizations. *Id.* § 203(d). This express statutory incorporation of FLSA precludes a monetary damage or back pay award against ALPA. *Neuman v. Northwest Airlines, Inc.,* 28 F.E.P. Cases 1488, 1490–91 (N.D.Ill.1982); *see Brennan v. Emerald Renovators, Inc.,* 410 F.Supp. 1057, 1059 n. 5 (S.D.N.Y.1975). Appellants are therefore only entitled to injunctive relief against the union.

### CONCLUSION

The judgment for TWA against ALPA is affirmed. The judgment in favor of TWA against Thurston and the EEOC is reversed and remanded to the district court with directions to enter judgment for appellants against TWA and ALPA and to award to each plaintiff such relief as it is entitled to against each defendant in accordance with this opinion, after such evidentiary hearing as may be necessary for that purpose.

VAN GRAAFEILAND, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority that the judgment in favor of Trans World Airlines, Inc. and against Air Line Pilots Association International should be affirmed. I dissent from the majority's reversal of the judgment in favor of TWA and against Thurston and the EEOC.

If I understand the basis for the latter holding, it is that pilots who reach 60 years of age are treated less favorably than younger pilots who sustain disabling injuries or whose positions are eliminated at a domicile by reductions in force. In my opinion, this is like comparing apples with oranges. A pilot does not know in advance that he is going to break his leg or that company economies will eliminate the job he is performing. However, a pilot knows the exact date on which he will become 60 years of age and that after that date, FAA regulations will no longer permit him to work as a pilot. Unlike a disabled younger man, a healthy pilot, 60 years of age, cannot go on unpaid medical leave for up to five years. For similar reasons, a 60 year old pilot should not be entitled to take a ten year furlough from a job he is forbidden by law to perform, accruing seniority status in the process. I don't believe Congress intended that such a pilot should be permitted to take a nine-year vacation and return to work at the age of 69, displacing a younger flight engineer, who might have a spouse and family but who has less seniority.

Apparently, TWA is the only trunk airline that voluntarily has permitted pilots over 60 to continue working as flight engineers. Instead of receiving commendation for what it has done, TWA is held liable as a matter of law for age discrimination. I would affirm the judgment of the district court.